CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

JAN 1 7 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KENNETH BRIAN JOYNER, | ) | |
| Plaintiff, | ) | Civil Action No. 7:06-cv-00377 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MAJOR J. C. COMBS, et al., | ) | By: Hon. James C. Turk |
| Defendant(s). | ) | Senior United States District Judge |

Plaintiff Kenneth Brian Joyner, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. In his complaint, Joyner alleges that the defendants, officers at Wallens Ridge State Prison (WRSP), violated his constitutional rights (a) by using excessive force against him, (b) by illegally punishing him for prison disciplinary infractions by placing him in segregation with his cell window covered for lengthy periods of time, and (c) by falsely charging him with disciplinary infractions to keep him in segregation and denying him due process in connection with supposed disciplinary convictions. Defendants filed a motion for summary judgment, based on Joyner's failure to exhaust administrative remedies as to all of his claims before bringing this lawsuit. Plaintiff responded to defendants' motion, making the matter ripe for disposition. Upon review of the record, the court grants the motion for summary judgment in part and denies it in part, finding that this case should be stayed, pending an upcoming decision by the United States Supreme Court on the exhaustion issue.

I.

Joyner's claims arise from the following alleged sequence of events. On June 22, 2005, Joyner was convicted of a 210 disciplinary offense (indecent exposure) and fined $12.00 by the

1

hearing officer (IHO). On June 28, 2005,[1] four unknown officers came to move Joyner from his general population cell to a segregation cell in order to enforce a WRSP policy requiring that inmates convicted of 210 offenses spend a set period of time in segregation with a cover over the cell window. In Claim (a), Joyner states that when he attempted to exercise various constitutional rights (due process, double jeopardy, equal protection, and freedom of speech), the officers, in retaliation and using excessive force, forcibly removed him from his cell, using an electronic shield against him. He also alleges that supervisory officers bear responsibility for the use of excessive force.

Joyner's Claim (b) directly challenges the "covered window" policy of WRSP. This policy was allegedly exercised against him during the following periods: February 12 to April 2004; June 28 to August or September 2005; January 3 to January 9, 2006; and January 27 to February 9, 2006. These covered window periods over a two-year period totaled 133 days. The record indicates that the covered window policy was imposed based on officers' reports that Joyner masturbated so that corrections employees could see him in the act. Pursuant to the WRSP covered window policy, each successive time he was convicted for such an offense, his window was covered for a lengthier period of time: seven days for the first offense, forty-five days for the second offense; and so on. This practice of covering an inmate's window following conviction on a 210 charge is not included in the list of penalties authorized under the Virginia Department of Corrections (VDOC) disciplinary policy, Division Operation Procedure (DOP) 861.

---

[1] The complaint and supporting affidavit do not state the date of this incident, but it is clear from informal inmate complaint forms Joyner filed that the incident in question occurred on June 28, 2005, and Joyner confirms the date in his affidavit in response to defendants' summary judgment motion.

2

In Claim (c), Joyner alleges that on various officers "falsely" charged and wrongly convicted him of 210 offenses, first because he refused to move to the general population and thereafter, in order to keep him in segregation. As a result of the convictions, Joyner has remained in segregation for several months. The documents attached to the complaint indicate that the 210 offenses concerned officers' reports that Joyner had masturbated in view of corrections employees, and on each occasion, the IHO found Joyner guilty, based on the reporting officer's testimony, and imposed a fine as the penalty for the offense.

## II.

### A. Failure to Exhaust Administrative Remedies

In 1996, Congress enacted the Prison Litigation Reform Act ("PLRA") in an attempt to reduce the number of frivolous civil rights cases filed by prisoners. In the PLRA, Congress amended 42 U.S.C. § 1997e, the provision relating to prisoners' exhaustion of administrative remedies. This section requires that

> [n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

Under the plain language of the statute, exhaustion of administrative remedies is a "prerequisite to suit" in the prisoner's civil rights context. See Nussle v. Porter, 534 U.S. 516, 524 (2002). The United States Supreme Court has held that the Section 1997e(a) exhaustion of administrative remedies requirement applies to "all inmate suits, whether they involve general circumstances or particular episodes, . . . whether they allege excessive force or some other wrong," and whether or not the form of relief the inmate seeks is available through exhaustion of administrative remedies. Id. To satisfy §1997e(a) before filing his §1983 action, an inmate must follow each step of the

3

established administrative procedure that the state provides to prisoners and meet all deadlines within that procedure. See Woodford v. Ngo, 126 S. Ct. 2378, 2387 (2006); Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir. 2002).

Defendants submit the affidavit of the WRSP institutional ombudsman, B. Ravizee, regarding Joyner's utilization of DOP 866, the grievance procedure available to him at WRSP in 2005. Under DOP 866, an aggrieved inmate must follow three distinct steps to exhaust the procedure's remedies. First, he must make a good faith effort to resolve the issue informally, by pursuing an informal complaint. DOP 866-7.13. If the inmate is not satisfied with the response to the informal complaint, he may file a regular grievance within 30 days from the occurrence or incident or from the discovery of the occurrence or incident, whichever date is later. DOP 866-7.14. The inmate must attach the informal complaint to his regular grievance form or explain in the regular grievance text his informal attempts to resolve the problem. Id. at (1). If the regular grievance meets intake requirements, the grievance coordinator will log it for processing and send the inmate a receipt. Id. at (2). If the grievance does not meet intake criteria for acceptance, the grievance coordinator will note the deficiencies on the back of the form and return it to the inmate. Id. An inmate may seek review of the intake decision within five (5) calendar days by sending the grievance to the Regional Ombudsman for a determination. Id. DOP 866 provides for three levels of review for regular grievances, although most complaints qualify for only two levels of review. DOP 866-7.15

On July 28, 2005, Joyner submitted a regular grievance about security staff using excessive force against him on June 28, 2005. On August 1, 2005, the grievance was returned to Joyner because he had not documented any attempt to resolve the issue informally. Because Joyner never resubmitted the regular grievance, defendants assert that he failed to exhaust administrative remedies

on the excessive force claim. Joyner had previously filed informal complaints about the covered window policy on June 22 and 29, 2005, but neither of these complaints requested investigation of the excessive force allegedly used against him on June 28, 2005.[2] Joyner also asserts that he had trouble getting informal complaint forms. He did not, however, include this excuse on the July 28, 2005 regular grievance or submit a new grievance explaining this alleged problem. Finally, Joyner appears to argue that a letter he mailed to Regional Director Larry Huffman on July 15, 2005, complaining about deprivation of personal property, should serve to fulfill the exhaustion requirement on the excessive force claim.[3] Sending a personal letter to the regional director is not a step in the proper exhaustion of remedies under DOP 866. Moreover, Joyner admits that regular grievance forms were readily available to him, indicating that he could have followed the proper procedure under DOP 866 by resubmitting his grievance with an explanation or documentation of informal resolution attempts. In the absence of any genuine issue of material fact, the court finds that Joyner did not properly exhaust administrative remedies as to the excessive force claim and that defendants are entitled to judgment as a matter of law, pursuant to 28 U.S.C. § 1997e(a), in this case as to Claim (a), alleging use of excessive force and retaliation.

---

[2]The June 29 complaint mentioned that Joyner was "aggressively brought to segregation," but does not give the date of the incident, name the officers involved, allege excessive force, or describe the injuries Joyner allegedly suffered. As stated, it complained about the covered window policy.

[3]On July 15, 2005, Joyner mailed Regional Director Larry Huffman a document headed: "Re: Personal Property." This document mentioned that on June 28, 2005, Joyner was "aggressively placed in segregation against his will," but then discusses personal property taken from Joyner's cell during "this entire ordeal of assault and battery." Apparently, to the document, Joyner attached the June 22 and 29, 2005, informal complaints. Huffman allegedly did not reply to this document.

5

Defendants also argue that Joyner failed to allege administrative remedies as to Claim (b), challenging the covered window policy. The court must agree. In addition to the informal complaints on June 22 and 29, 2005, and the regular grievance on July 28, 2005, all of which mentioned the covered window policy, Joyner filed a regular grievance on January 11, 2006, complaining that his window had been covered on January 3, 2006. This grievance was returned to him because it did not provide sufficient information. On January 11, 2006, Joyner also submitted an information request, stating that he did not have a copy of the memorandum authorizing officers to cover his cell window. Ravizee replied to this request on January 12, informing Joyner that he needed to follow the directions on the back of the grievance form, that he needed to provide the dates on which his window was covered, and that there was a 30-day time limit to submit a grievance. Joyner filed a second information request on January 17, 2006, again asking for a copy of the memorandum about his window being covered and asking that his grievance be processed. He was notified that he could appeal the intake decision regarding his grievance. Joyner made no such appeal, however, and did not submit another grievance on the issue. Defendants' records also indicate that Joyner did not file regular grievances about other periods when his cell window was covered in 2004, 2005, and later in January 2006. Joyner does not dispute this information, but instead argues that letters he sent to VDOC Director Gene Johnson and Regional Director Larry Huffman should satisfy the exhaustion requirement under § 1997e(a). Clearly, under Ngo, an inmate cannot create his own system of administrative remedies, but must follow the established procedures and meet the deadlines set within those procedures. 126 S. Ct. at 2387. Finding no material fact in dispute, the court concludes that Joyner failed to exhaust his administrative remedies properly as

6

to Claim (b), concerning the WRSP covered window policy and that defendants are thus entitled to summary judgment in this case as to this claim.[4]

Defendants assert that the thirty-day period under DOP 866 for filing a regular grievance has expired as to Joyner's challenges to the applications of the covered window policy against him in 2004, 2005, and 2006. Because the DOP includes an opportunity for an inmate to appeal an intake decision finding his grievance to be untimely, however, it is not clear that Joyner has no remedy available. Therefore, the court will dismiss the excessive force and covered window claims without prejudice.

## B. Total Exhaustion Argument

Defendants provide evidence that Joyner's Claim (c), concerning his disciplinary charges, hearings, convictions, and penalties under the VDOC disciplinary system, is not "grievable" under DOP 866. They assert that this claim is "exhausted."[5] Defendants also note that because Joyner did not lose earned good conduct credit as a penalty for any of these convictions, he is not first required to have the convictions set aside before proceeding with his § 1983 action. See Edwards v. Balisok, 520 U.S. 641 (1996). Rather than address the exhausted claims on the merits, however, defendants argue that they are entitled to summary judgment and dismissal of the entire action because Joyner included a mixture of exhausted and unexhausted claims in the complaint. In support of this argument, they cite Al-Amin v. Johnson, C/A No. 2:04cv346 (E.D. Va., March 16, 2005)

---

[4]Joyner argues that the covered window policy is not grievable. DOP 866-7.11 expressly states, however, that an inmate may file grievances about "procedures of the facility, region, division, or department" that directly affects him.

[5]Defendants do not address whether completion of the appeals process under DOP 861, governing all disciplinary matters, is necessary for satisfaction of § 1997e(a) for claims about disciplinary proceedings.

7

(unpublished), a case dismissed by the United States District Court for the Eastern District of Virginia, based solely on the fact that the inmate plaintiff, Al-Amin, had exhausted administrative remedies only as to some, but not as to all, of the claims raised in his complaint. Al-Amin filed a pro se appeal of the district court's decision, and the United States Court of Appeals for the Fourth Circuit appointed counsel and directed briefing and argument. (No. 05-6455). Subsequently, the Fourth Circuit placed Al-Amin's appeal in abeyance pending the outcome of two other cases that have now been argued before the United States Supreme Court, No. 05-7058, Jones v. Michigan Dept. of Corr., and No. 05-7142, Williams v. Overton.[6] The Supreme Court's docket indicates that the questions presented in these cases are: (1) whether satisfaction of the exhaustion requirement under 42 U.S.C. § 1997e(a) must be alleged in the complaint or must be raised as an affirmative defense; and (2) whether § 1997e(a) presents a "total exhaustion" rule that requires a district court to dismiss a prisoner's federal civil rights complaint for failure to exhaust administrative remedies whenever there is a single unexhausted claim, despite the presence of other exhausted claims in the complaint. The docket also notes that the federal circuit courts of appeals are "intractably split" on these questions.

This court has held that the exhaustion requirement of §1997e(a) does not require dismissal of an inmate's entire, multi-claim complaint, merely because some of the claims are exhausted and some are not.[7] See Johnson v True, 125 F. Supp.2d 186, 188 (W.D. Va. 2000). Rather, the court

---

[6]The most recent entry on the electronic docket of the United States Supreme Court for the Jones and Williams cases indicates that the Court heard arguments on October 30, 2006.

[7]The United States Court of Appeals for the Fourth Circuit has not yet addressed the issue of whether §1997e(a) requires dismissal of any prisoner civil rights complaint presenting a mixture of exhausted and unexhausted claims. Other circuits, in addressing the issue, have reached opposite conclusions. Compare Jones Bey v. Johnson, 407 F.3d 801, 806 (6th Cir. 2005); Ross v. County of

8

interprets the statute to require dismissal only of those claims proven to be unexhausted. The United States Court of Appeals for the Second Circuit has also reached this conclusion on reasoning that this court finds to be sound. See Ortiz v. McBride, 380 F.3d 649 (2d Cir. 2004) (rejecting total exhaustion). For the many reasons explained in the Ortiz opinion, this court finds no merit to defendants' motion seeking dismissal of the entire action because Joyner included some unexhausted claims in his complaint. Instead, the court will dismiss without prejudice the unexhausted claims and will deny the motion for summary judgment as to Claim (c), regarding Joyner's disciplinary proceedings. Furthermore, this court will stay all action in this case until the United States Supreme Court issues its decision in Jones/Williams on the issue of total exhaustion under § 1997e(a). An appropriate order shall be issued this day.

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 17th day of January, 2007.

/s/ James C. Turk
Senior United States District Judge

---

Bernalillo, 365 F.3d 1181, 1190 (10th Cir. 2004) (applying total exhaustion); Kozohorsky v. Harmon, 332 F.3d 1141 (8th Cir. 2003) (same); and Graves v. Norris, 218 F.3d 884 (8th Cir. 2000) (same); with Ortiz v. McBride, 380 F.3d 649 (2d Cir. 2004) (rejecting total exhaustion).

9