CLERK'S OFFICE U.S. DIST. COURT
AT ROANOKE, VA
FILED

SEP 1 3 2007

JOHN F. CORCORAN, CLERK
BY:
DEPUTY CLERK

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| KENNETH BRIAN JOYNER, | ) | |
| Plaintiff, | ) | Civil Action No. 7:06-cv-00377 |
| | ) | |
| v. | ) | **MEMORANDUM OPINION** |
| | ) | |
| MAJOR J. C. COMBS, et al., | ) | By: Hon. James C. Turk |
| Defendant(s). | ) | Senior United States District Judge |

Plaintiff Kenneth Brian Joyner, a Virginia inmate proceeding pro se, brought this action under the Civil Rights Act, 42 U.S.C. §1983, with jurisdiction vested under 28 U.S.C. §1343. The matter is now ripe for consideration of defendants' supplemental motion for summary judgment, addressing the merits of Joyner's claims that officers at Wallens Ridge State Prison (WRSP) falsely charged him with disciplinary infractions, did not allow him to present witnesses in his defense, and found him guilty without evidence other than the reporting officer's testimony, all in violation of his due process rights.[1] Upon review of the record, the court concludes that defendants' motion must be granted.

---

[1] In his complaint, Joyner alleged that the defendants, officers at WRSP violated his constitutional rights (a) by using excessive force against him, (b) by illegally punishing him for prison disciplinary infractions by placing him in segregation with his cell window covered for lengthy periods of time, and (c) by falsely charging him with disciplinary infractions to keep him in segregation and denying him due process in connection with supposed disciplinary convictions. The court previously dismissed claims (a) and (b) without prejudice upon finding that Joyner had not exhausted his administrative remedies as to these claims before bringing this lawsuit. See 42 U.S.C. § 1997e(a).

1

# I.

**A. June 6, 2005**

Counselor Harris charged Joyner on June 6, 2005, with masturbating so that he could be viewed through the crack in the side of the cell door, while calling Harris's name. Harris charged Joyner with violating Offense Code #210A (indecent exposure). An officer served the charge on Joyner that same day, and he requested an advisor and the right to appear and present documentary evidence at a disciplinary hearing. He did not accept a penalty offer of a $10.00 fine. Pursuant to Division Operating Procedure (DOP) 861, the written disciplinary offense report (DOR) stands as the testimony of the reporting officer for category II offenses, including indecent exposure charges. The inmate is allowed to request additional information from the reporting officer through written questions, however. Joyner submitted written questions for Harris, and she responded in writing. He did not request statements from any other witnesses.

Hearing Officer Hensley conducted a disciplinary hearing on June 22, 2005, on the indecent exposure charge. Joyner was present with his advisor and pleaded not guilty. Hensley read Harris's written responses into the record. Joyner then testified that Harris was lying, that as she entered the pod, she saw him standing at his cell door listening to his headphones. Joyner also argued that because two other inmates had received charges from Harris within ten minutes of his charge, she could not have been at Joyner's cell door during the time when the charge was written. Hensley reviewed the other two charges and found them to be corroboration of Harris's testimony that at the time stated on Joyner's charge, she was in the vicinity of Joyner's cell and saw him masturbating at the crack of his cell door while calling her name to get her attention. Finding Harris's story to be

2

more credible that Joyner's story, Hensley found Joyner guilty as charged and imposed a penalty of a $12.00 fine. This finding was upheld on appeal.

**B. September 12, 2005 Charge**

On September 12, 2005, Officer D. Williams charged Joyner with refusing to comply with a direct order to move from cell A-317 to A-204, in violation of Offense Code #201 (disobeying a direct order). That same day, an officer served Joyner with a copy of the Disciplinary Offense Report (DOR) and advised him of his rights for the upcoming hearing. Joyner refused a penalty offer of ten (10) days in isolation and elected to proceed to the disciplinary hearing. He requested an advisor, witnesses, documentary evidence, and the right to appear at the hearing. He also completed a form asking for additional information from the reporting officer, D. Williams, who is not required to appear at the hearing. Williams responded in writing to Joyner's requests for additional information. Joyner also sent a witness form for Sergeant Mullins, the building supervisor who supervised inmate movement from segregation to the general population September 12, 2005; Joyner wanted Mullins to testify because "she cannot say that he told her that he did not want to go to General Population."

Hearing Officer R. Burton conducted the disciplinary hearing on the #201 charge on September 26, 2005. With his advisor present, Joyner pleaded not guilty to the offense. Burton states that he deemed the witness statement from Mullins to be irrelevant to the charge, because Mullins would not have approached Joyner's cell to give the order to move. Burton read into the record the reporting officer's written responses to Joyner's witness questions. Joyner testified that on September 12, 2005, he was packed and ready to move to another cell, but no one opened his cell door. Williams's responses indicated that Joyner refused to be moved without saying why. Ruling

3

that the written testimony of the reporting officer was more credible that Joyner's testimony, Burton found the evidence was sufficient to show that Joyner was ordered to move to population and refused to do so. Burton then found Joyner guilty of violating a direct order and imposed a penalty of a $5.00 fine. This finding was upheld on appeal.

**C. December 9, 2005 Charge**

Officer Greear wrote the next charge against Joyner. The DOR stated that as Greear was picking up meal trays in the D-4 pod on December 9, 2005, Joyner handed in his tray, stepped back, masturbated and ejaculated as Greear was closing the tray slot. Greear charged Joyner with violation of Offense Code #210A (lewd or obscene acts directed toward or in the presence of another). An officer provided Joyner with a copy of this charge on December 11, 2005. Joyner requested an advisor, witnesses, and the right to appear at the hearing. He also completed a form asking for additional information from the reporting officer, and Greear responded in writing. An officer advised Joyner of a penalty offer of a $5.00 fine, but Joyner failed to respond to this offer within the allotted time, which constitutes rejection of the penalty offer.

Burton conducted the disciplinary hearing on this charge on December 19, 2005. With his advisor present, Joyner pleaded not guilty to the #210A charge. As Greear was not present, Burton read Greear's written responses to Joyner's questions into the record. Joyner testified that Greear was lying about this charge, that in vulgar language, she had asked him (and other inmates in the unit) to expose his penis to her, and when he refused and swore at her, she became angry and retaliated by writing the #210A charge. Joyner had asked for a witness statement from Inmate Maxwell, who was housed in an adjacent cell, alleging that Maxwell would testify about overhearing Greear's comments to Joyner on December 9, 2005. Burton ruled Maxwell's witness statement to

4

be irrelevant, because the inmate could not verify what Joyner was doing inside Joyner's cell. After considering Greear's statement and Joyner's testimony, Burton found Joyner guilty of lewd or obscene acts against Greear and imposed a penalty of a $12.00 fine. This charge was upheld on appeal.

**D. December 17, 2005 Charge**

The DOR for this charge stated that as Officer Middleton was picking up trash in D-4 housing unit on December 17, 2005, she observed Joyner standing on his toilet and masturbating in plain view to anyone standing near his cell. Middleton charged Joyner with violating Offense Code #210A. He received a copy of the charge that same day, requested an advisor and documentary evidence, and submitted witness requests for Officer Rollins, Inmate Maxwell, and Assistant Warden Harvey. He also submitted written questions for Middleton, who responded in writing. By refusing to respond promptly to the penalty offer of a $7.00 fine, Joyner rejected the offer.

Burton conducted the hearing on this charge on January 4, 2006. With his advisor present, Joyner pleaded not guilty to the charge. Burton read Middleton's responses into the record. Joyner testified, denying that he had masturbated in plain view of Middleton. Burton found Middleton's responses to be consistent with the offense report and noted that according to Middleton, Joyner had been warned three times about his behavior on the morning before the charge. Joyner's witness statements Burton found to be irrelevant to the charge.[2] Burton found Joyner guilty of violating

---

[2] Here are Joyner's stated reasons for requesting testimony from the following witnesses: (a) Officer Rollins's testimony could impeach Middleton's testimony because he "exited the office with Middleton on the day of the charge and saw Joyner standing at his cell door; (b) Inmate Maxwell witnessed an extensive conversation on December 18, 2005, about the charge Middleton had written the previous day; and (c) A.P. Harvey saw Middleton discussing the charge on December 18, 2005.

5

Offense Code #210A on December 17, 2005, and imposed a penalty of a $12.00 fine. This ruling was upheld on appeal.

**II.**

Summary judgment is proper where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. Upon motion for summary judgment, the court must view the facts, and the inferences to be drawn from those facts, in the light most favorable to the party opposing the motion. United States v. Diebold, Inc., 369 U.S. 654, 655 (1962). Rule 56(c) mandates entry of summary judgment against a party who "after adequate time for discovery and upon motion . . . fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex v. Catrett, 477 U.S. 317, 322 (1986). A genuine issue of material fact exists if reasonable jurors could find by a preponderance of the evidence that the nonmoving party is entitled to a verdict in her favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986).

When a motion for summary judgment is made and properly supported by affidavits, depositions, or answers to interrogatories, the non-moving party may not rest on the mere allegations or denials of the pleadings. Rule 56(e). Instead, the non-moving party must respond by affidavits or otherwise and present specific facts from which a jury could reasonably find for either side. Anderson, 477 U.S. at at 256-57.

While convicted prisoners relinquish many rights upon being incarcerated, the due process clause of the Fourteenth Amendment mandates several procedural safeguards before an inmate may be punished for violating prison disciplinary rules with the loss of protected liberty interests, such as earned good conduct time, or with deprivation of property. Wolff v. McDonnell, 418 U.S. 539,

6

557-58 (1974). Before taking an inmate's good conduct time or property as punishment, prison officials must provide the inmate with (1) advance written notice of the charge against him; (2) a written record of the disciplinary committee's findings and the evidence relied on in convicting him; and (3) in limited circumstances, the right to call witnesses.[3] Id. at 563-67. Furthermore, an inmate is entitled to have the charges against him decided by a fair and impartial tribunal. Id.

The United States Supreme Court specifically refused to require that facts in support of prison disciplinary charges be proven beyond a reasonable doubt. Superintendent v. Hill, 472 U.S. 445, 456 (1985) (finding that penalties imposed in prison disciplinary proceedings "are not comparable to a criminal conviction, and neither the amount of evidence necessary to support such a conviction, nor any other standard greater than some evidence applies in this context") (citations omitted). A reviewing court's determination as to whether a prison disciplinary hearing officer's finding comports with the Hill evidence standard "does not require examination of the entire record, independent assessment of the credibility of witnesses, or weighing of the evidence. Instead, the relevant question is whether there is any evidence in the record that could support the conclusion reached" by the hearing officer. Id. at 455.

---

[3] Wolff listed the following appropriate justifications for a prison tribunal's refusing to allow an inmate to present specific witnesses: "irrelevance, lack of necessity, [and] the hazards [to institutional safety or correctional goals] presented in individual cases." Furthermore, the Court in Wolff concluded that Due Process did not require affording inmates the right to confront or cross-examine witnesses at disciplinary hearings because such rights would potentially present greater interference with prison security interests and because hearing participants could establish "adequate bases for decision" using other procedures. Id. at 568. In handling witnesses for the inmate at a disciplinary hearing, the hearing officer satisfies due process if he explains, "in a limited manner, the reason why witnesses were not allowed to testify," and the reason is logically related to penalogical interests. Ponte v. Real, 471 U.S. 491, 497 (1985).

7

Not all disciplinary-based restrictions on an inmate's liberty give rise to constitutional due process protections. Inmates' liberty "interests will be generally limited to the freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Changes "in a prisoner's location, variations of daily routine, changes in conditions of confinement (including administrative segregation), and the denial of privileges [are] matters which every prisoner can anticipate [and which] are contemplated by his original sentence to prison." Gaston v. Taylor, 946 F.2d 340, 343 (4th Cir. 1991). Furthermore, such changes are necessarily functions of prison management that must be left to the broad discretion of prison administrators to enable them to manage prisons safely and effectively. Id.

III.

Under these principles, Joyner fails to present any genuine issue of material fact in dispute regarding the due process protections he received related to each of the four disciplinary charges at issue. Disciplinary proceedings in each instance included all of the elements required under Wolffe: advance notice of the charge and the events from which it arose, a hearing before an impartial officer, a limited right to present evidence and witnesses,[4] and a written statement of reasons in support of the guilty finding. In addition, Joyner had access to an appellate process and received independent review of the hearing officer's findings.

---

[4]It is undisputed that Joyner had opportunity to seek witness statements related to each of the disciplinary charges at issue.

8

Joyner claims that according to the written findings in these disciplinary hearings, the hearing officers found him guilty based only on the hearing officer's testimony and that such a finding is insufficient under Hill. The record does not support this assertion. In each of the disciplinary proceedings at issue, the hearing officer made a detailed written record of the reasons for the finding of guilty. Hensley found that the June 6, 2005, was supported by Counselor Harris's statements, her responses to Joyner's written questions, and two additional charges that she wrote against other inmates in the same vicinity and time period as the charge against Joyner. Burton found that the September 12, 2005 charge was supported by Officer Williams's written offense report statement and Williams's responses to Joyner's written questions, and that the requested witness, Mullins, could not offer testimony relevant to a decision about whether Joyner violated the offense code or not.[5] As to the charge written on December 9, 2005, Burton found that Officer Greear's written offense report and her responses to Joyner's written questions were sufficient to support a finding of guilty. Finally, Burton found that the December 17, 2005 charge was supported by Officer Middleton's written offense report and her responses to Joyner's written questions and that none of Joyner's requested witnesses could offer testimony relevant to whether Joyner committed the act as charged.

In each proceeding, the hearing officer did not simply rubber stamp the offense report without consideration of other testimony. In each case, the hearing officer heard Joyner's testimony and read the reporting officer's written report and responses, ruled as to the relevancy of other witnesses

---

[5]Even now, Joyner does not explain clearly why Officer Mullins's testimony would have helped his defense in any way. What Joyner did or did not tell Mullins about his feelings on moving to general population has no bearing on the evidence that he failed to comply with the direct order that Officer Williams gave him to move from one cell to another.

9

requested, and then made a specific finding that the reporting officer's version of events was more credible that Joyner's version and included all elements of the offense so as to support a finding of guilty. Clearly, "some evidence" supported the guilty finding in each case. As this court cannot second guess the hearing officers' findings as to credibility, Hill, 472 U.S. at 455, Joyner's allegations that the reporting officers falsely accused him of committing the disciplinary offenses does not affect the court's due process analysis here; due process protects an inmate's right to a fair hearing and not to a correct finding of fact. The record indicates that Joyner received all the due process protections to which he was entitled.

Joyner complains that the Wallens Ridge policy of allowing inmate testimony only through written witness statements violates his right to due process. The court finds this policy to be quite consistent with the principles set forth in Wolffe. 418 U.S. at 566. In any event, Joyner fails to demonstrate that any of the inmate witnesses he requested were eye witnesses to the behavior for which he was charged. Nor does he submit any affidavits from these witnesses, indicating the content of their potential testimony or their willingness to complete a witness statement on his behalf, consistent with his allegations. Accordingly, the court upholds the each hearing officer's decision that the testimony of the desired witness(es) was irrelevant to a decision on Joyner's guilt or innocence and was, therefore, properly not considered.

Finally, Joyner complains that his placement and maintenance in segregated confinement in relation to the challenged disciplinary charges was, in itself, a violation of his constitutional rights. Courts have held that placement and long term detention in segregated confinement under Virginia's prison regulations does not give rise to any liberty interest under Sandin. See, e.g., DeBlasio v. Johnson, 128 F. Supp.2d 315, 328-29 (E.D. Va. 2000), aff'd by Madison v. Johnson, 12 Fed. App'x.

10

Case 7:06-cv-00377-JCT-mfu   Document 23   Filed 09/13/07   Page 10 of 12   Pageid#: 387

149 (4th Cir. 2001) (unpublished). Thus, Joyner has no due process claim concerning his confinement in segregation related to these disciplinary charges. Moreover, as he fails to allege that segregated confinement has caused him any significant physical or mental health injury, he fails to state any claim of cruel and unusual punishment in violation of the Eighth Amendment. See Strickler v. Waters, 989 F.2d 1375, 1380-81 (4th Cir. 1993). The court finds no genuine issue of material fact in dispute as to any of Joyner's due process claims and will grant defendants' motion for summary judgment accordingly.

IV.

In his response to defendants' motion for summary judgment, Joyner repeatedly attempts to resubmit his claims concerning the covered window policy at WRSP. These claims will not be addressed in this lawsuit. The court previously dismissed these claims on the ground that Joyner failed to exhaust administrative remedies on this issue before bringing this lawsuit. Joyner has made no specific amendment to his complaint to resubmit these claims or offered any proof that he has now exhausted administrative remedies as to his challenge to the covered window policy.[6]

In his response, Joyner also alleges that the officers harassed and retaliated against him because he complained about the covered window policy. His allegations of retaliation are merely conclusory and thus do not rise to a constitutional claim actionable under § 1983. See Adams v.

---

[6]Joyner asserts that the covered window policy is not a grievable issue, because among other things, disciplinary hearing decisions and penalties are not grievable under Division Operating Procedure (DOP) 866. The record clearly indicates, however, that application of the covered window policy against Joyner was not part of the disciplinary proceedings themselves; the only penalties imposed in the challenged disciplinary proceedings were monetary fines. Moreover, procedures of the prison facility are grievable to the extent that they affect the inmate personally. See DOP 866 -7.11(1). As the covered window policy is a grievable matter under DOP 866, Joyner must exhaust his administrative remedies concerning this policy before he can file another court action challenging the policy.

Rice, 40 F.3d 72, 74 (4th Cir. 1994). Allegations of verbal abuse and harassment by guards also do not state any constitutional claim. See Cullins v. Cundy, 603 F.2d 825, 827 (10th Cir. 1979). Thus, to the extent that Joyner raises such claims in his complaint, defendants are entitled to summary judgment.

V.

In conclusion, the court finds no genuine issue of material fact in dispute as to any of Joyner's remaining claims. Accordingly, the court will grant defendants' supplemental motion for summary judgment. An appropriate order shall be issued this day.

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this memorandum opinion and the accompanying order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

The Clerk is directed to send copies of this memorandum opinion and accompanying order to plaintiff and to counsel of record for the defendants.

ENTER: This 13th day of September, 2007.

*James C. Turk*
Senior United States District Judge